**EL CHICO CORPORATION, Petitioner,**

v.

**A. Bryan POOLE, et ux., Individually and as Heirs of the Estate of Larry Bryan Poole, Deceased, Respondents.**

**JOLEEMO, INC., et al., Petitioners,**

v.

**Wendel EVANS, et al., Respondents.**

**Nos. C–5639, C–5798.**

Supreme Court of Texas.

June 3, 1987.

Rehearing Denied July 15, 1987.

Charles W. Lyman and James D. Ebanks, Giessel, Stone, Barker & Lyman, Houston, for El Chico.

Robert C. Floyd and Timothy D. Riley, Floyd, Taylor & Riley, Houston, for Poole.

Harold Tom Hermansen and Carlos Villarreal, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for Joleemo, Inc et al.

William R. Edwards, Edwards & Terry, Russell McMains, McMains & Constant, Corpus Christi, for Evans et al.

SPEARS, Justice.

These two wrongful death and survival actions were submitted together to determine whether a person injured by an intoxicated driver may recover from the alcoholic beverage licensee who allegedly sold intoxicants to that intoxicated driver in violation of the Texas Alcoholic Beverage Code. In *El Chico v. Poole*, Mr. and Mrs. Bryan Poole sued El Chico Corporation and Rene Saenz for the death of their son, Larry, alleging that El Chico negligently served alcohol to an intoxicated Saenz who later collided with Larry's car. The trial court severed the action against Saenz and granted summary judgment for El Chico. The court of appeals reversed the trial court's summary judgment and remanded the cause for trial. 713 S.W.2d 955. We affirm.

In *Joleemo v. Evans*, Mr. and Mrs. Wendel Evans sued Joleemo, Inc., Bobby L. Morris, individually and d/b/a Bandy's, and Henry Scott Smith for the death of their son, Patrick, alleging that Bandy's negligently served alcohol to Smith, who later struck Patrick's motorcycle. The trial court dismissed the Evanses' petition for failure to state a cause of action. The court of appeals reversed and remanded the cause for trial. 714 S.W.2d 394. We affirm.

The *El Chico* summary judgment evidence established the following facts: On Friday, January 21, 1984, Rene Saenz, an admitted alcoholic, left work and proceeded with a friend to the El Chico restaurant in Northwest Mall in Houston. Saenz arrived at El Chico shortly after 5:00 p.m. Saenz remembered ordering his first drink, but remembered nothing else until the accident which occurred around 8:00 p.m., three to five blocks from El Chico. In his deposition, Saenz stated that he did not pass out, but rather "blacked out"—forgot or erased from memory—the incidents leading to the accident. Saenz attributed his "black-out" to his inebriation and desire to "put the accident behind him." Saenz did not recall the number of beverages he drank, but he believed the quantity was sufficient to cause his black-out. Saenz did not remember his condition in El Chico nor could he recall whether his conduct would have alerted any El Chico employees to his intoxicated condition.

Saenz left El Chico around 7:45 p.m. The collision resulting in Larry Poole's death occurred a few minutes later as Saenz was speeding north on Mangum Road and ran a red light at the intersection

of Mangum and the Northwest Freeway service road. His truck struck Larry's car as Larry was turning left onto the service road. Larry Poole was dead on arrival at Hermann Hospital. The police officer who investigated the accident observed Saenz was wobbly and swaying in his movements, had a strong smell of alcohol on his breath, was talkative although mumbling, and appeared to be intoxicated. A breath alcohol test administered at the scene resulted in a .18 reading. Saenz was arrested for driving while intoxicated and later convicted of involuntary manslaughter.

In *Joleemo,* the trial court dismissed the Evanses' cause of action upon Joleemo's special exceptions that the pleadings failed to state a cause; therefore, we accept the facts pleaded by the Evanses as true in determining whether a cause of action exists. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 933–34 (Tex.1983); *Wheeler v. White,* 398 S.W.2d 93, 95 (Tex.1966). Patrick Evans died shortly after Henry Scott Smith negligently collided with Patrick's motorcycle near the intersection of Weber Road and South Staples in Corpus Christi. The collision occurred in the early morning hours of Monday, November 14, 1984, after Smith had spent Sunday evening and early Monday morning consuming alcoholic beverages at "Bandy's." On Sunday evening, Bandy's served free drinks from 8:00 p.m. to 9:30 p.m., and then charged $1.00 per drink for the remainder of business hours. Even though those associated with Bandy's knew or should have known Smith was intoxicated, they continued to serve him drinks.

The courts of appeals in *Joleemo* and in *El Chico* reversed the respective trial courts' judgments. The *El Chico* court of appeals held:

> ... [A] bar owner owes a duty to the motoring public not to knowingly sell an alcoholic beverage to an already intoxicated person.

713 S.W.2d at 958. The court determined that whether El Chico breached its duty and whether the breach was a proximate cause of the Pooles' damages were issues for a jury to decide when the evidence

raises those issues. *Id.* The *Joleemo* court of appeals, in broader language, held:

> ... [U]nder general common law principles, a tavern owner who encourages one to consume too much alcohol, continues to serve him alcohol after he knows or should know he was intoxicated, and who knows or should know that he will operate a motor vehicle on the public streets, owes a duty to third persons to take such precautions as are reasonable and prudent to prevent the intoxicated person from driving, and it is foreseeable that a breach of this duty could cause injury to third persons.

714 S.W.2d 396.

On appeal here, both El Chico and Joleemo argue that in the absence of a legislative dramshop act specifically creating a civil remedy and civil cause of action against alcoholic beverage licensees, no cause of action may be maintained against them. The Pooles and Evanses contend that liability may be imposed upon an alcoholic beverage licensee based upon the common law principles of negligence and negligence *per se.* An alcoholic beverage licensee refers to the holder of an Alcoholic Beverage Commission permit or license who may sell or serve alcoholic beverages. *See generally* TEX.ALCO.BEV.CODE ANN. tit. 3 (Vernon 1978 & Supp.1987). The duty, if any, of one who dispenses or serves liquor gratuitously, in absence of a license or permit, is not involved in this appeal.

At common law, a purveyor of alcoholic beverages was not liable for damages sustained by third persons resulting from a patron's intoxication. 48A C.J.S. *Intoxicating Liquors* § 428 (1981); Annot., 97 A.L. R.3d 528 (1980). The rule of non-liability was two-fold. First, the consumption, not the sale or service of alcohol, was viewed as the sole proximate cause of the patron's intoxication and later injury to a third party. An able-bodied person was responsible for his or her own actions. Second, even if the sale were a proximate cause of the intoxication, injury to a third person was an unforeseeable result of the patron's intoxication.

In recent years, modern analyses have discarded the absolute rule of no liability in favor of an approach incorporating current legal understanding as dictated by conditions and circumstances of modern society. An intoxicated person is by definition not an able-bodied nor able-minded person. Of fifty American jurisdictions (including the District of Columbia and excluding Texas), twenty-nine recognize a common law cause of action against an alcoholic beverage purveyor for injuries caused by an intoxicated customer.[1] Additionally, nineteen state legislatures have enacted civil dramshop liability,[2] seven of which also have recognized a complementary and supplemental common law cause of action.[3] In total, a civil cause of action exists in forty-one jurisdictions with a substantial majority basing the cause of action upon the common law principles of negligence, negligence *per se*, or both. Focusing on the carnage inflicted upon innocent victims by drunk drivers, courts have rejected the rationale supporting no liability as outdated and unrealistic and thus invalid. Injury to a third person is no longer unforeseeable in an age when death and destruction occasioned by drunk driving is so tragically frequent. *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135, 137 (1980).

As demonstrated by the actions of the majority of states, the common law is not frozen or stagnant, but evolving, and it is the duty of this court to recognize the evolution. *See Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 310 (Tex.1983). Indeed, it is well established that the adoption of the common law of England was

**1.** *Buchanan v. Merger Enterprises, Inc.,* 463 So.2d 121 (Ala.1984); *Nazareno v. Urie,* 638 P.2d 671 (Alaska 1981); *Ontiveros v. Borak,* 667 P.2d 200, 136 Ariz. 500 (Ariz.1983); *Largo Corp. v. Crespin,* 727 P.2d 1098 (Colo.1986); *Kowal v. Hofher,* 181 Conn. 355, 436 A.2d 1 (1980); *Marusa v. District of Columbia,* 484 F.2d 828 (D.C.Cir. 1973); *Sutter v. Hutchings,* 254 Ga. 194, 327 S.E.2d 716 (1985); *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533 (1980); *Alegria v. Payonk,* 101 Id. 617, 619 P.2d 135 (1980); *Elder v. Fisher,* 247 Ind. 598, 217 N.E.2d 847 (1966); *Pike v. George,* 434 S.W.2d 626 (Ky.1968); *Thrasher v. Leggett,* 373 So.2d 494 (La.1979) (vendor owes duty to intoxicated patron); *Michnik-Zilberman v. Gordon's Liquor, Inc.,* 390 Mass. 6, 453 N.E.2d 430 (1983); *Munford, Inc. v. Peterson,* 368 So.2d 213 (Miss.1979); *Klingerman v. Sol Corp.,* 505 A.2d 474 (Me.1986); *Carver v. Shafer,* 647 S.W.2d 570 (Mo.App.1983); *Ramsey v. Anctil,* 106 N.H. 375, 211 A.2d 900 (N.H.1965); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1 (1959); *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982); *Berkeley v. Park,* 47 Misc.2d 381, 262 N.Y.S.2d 290 (1965); *Hutchens v. Hankins,* 63 N.C.App. 1, 303 S.E.2d 584, *rev. denied,* 309 N.C. 191, 305 S.E.2d 734 (1983); *Mason v. Roberts,* 33 Ohio St.2d 29, 294 N.E.2d 884 (1973); *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550 (1964); *Walz v. City of Hudson,* 327 N.W.2d 120 (S.D.1982); *Christiansen v. Campbell,* 285 S.C. 164, 328 S.E.2d 351 (App.1985) (licensee owes duty to intoxicated patron); *Mitchell v. Ketner,* 54 Tenn.App. 656, 393 S.W.2d 755 (1964); *Young v. Caravan Corp.,* 99 Wash.2d 655, 663 P.2d 834 (1984); *Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984); *McClellan v. Tottenhoff,* 666 P.2d 408 (Wyo.1983). *But see Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965); *Wright v. Moffitt,* 437 A.2d 554 (Del.1981); *Demchuk v. Duplancich,* 92 Ill.2d 1, 64 Ill.Dec. 560, 440 N.E.2d 112 (Ill.1982); *Connolly v. Conlan,* 371 N.W.2d 832 (Iowa 1985); *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731 (Kan.1985); *Felder v. Butler,* 292 Md. 174, 438 A.2d 494 (1981); *Browder v. Int'l Fidelity Ins. Co.,* 413 Mich. 603, 321 N.W.2d 668 (1982); *Holmquist v. Miller,* 367 N.W.2d 468 (Minn.1985); *Runge v. Watts,* 180 Mont. 91, 589 P.2d 145 (1979); *Holmes v. Circo,* 196 Neb. 496, 244 N.W.2d 65 (1976); *Hamm v. Carson City Nugget, Inc.,* 85 Nev. 99, 450 P.2d 358 (1969); *Thoring v. Bottonsek,* 350 N.W.2d 586 (N.D.1984). Common law liability is unaddressed in Oklahoma, Rhode Island, Vermont, Virginia, and West Virginia. The status of common law liability is unclear in Florida, Oregon, and Utah.

**2.** ALA.CODE § 6–5–71 (1975); ALASKA STAT. § 04.21.020 (1986); COLO.REV.STAT. 13–21–103 (1974); CONN.GEN.STAT.ANN. § 30–102 (West Supp.1987); FLA.STAT.ANN. § 768.125 (West 1986); ILL.ANN.STAT. ch. 43, § 135 (Smith-Hurd Supp.1986); IOWA CODE ANN. § 123.92 (West 1987); ME.REV.STAT.ANN. tit. 28 § 1402 (West Supp.1986); MICH.COMP. LAWS ANN. § 436.22 (West Supp.1987); MINN. STAT.ANN. § 340A–801 (West Supp.1987); N.Y. GEN.OBLIG.LAW § 11.101 (McKinney 1978); N.C.GEN.STAT. § 18B–121 (1983); N.D.CENT. CODE § 5–01–06 (1983 Supp.); OHIO REV. CODE ANN. § 4399.01 (1985); OR.REV.STAT. § 30.950 (1985); R.I.GEN.LAWS § 3–14–1 to 14–15 (1986); UTAH CODE ANN. § 32A–14–1 (1986); VT.STAT.ANN. tit. 7, § 501 (1972); WYO.STAT. 12–5–502 (1986). Generally, civil dramshop liability is strict liability. *See, e.g.,* ILL.ANN.STAT. ch. 43, § 135.

**3.** *Buchanan* (Ala.); *Crespin* (Colo.); *Kowal* (Conn.); *Klingerman* (Me.); *Berkeley* (N.Y.); *Hutchens* (N.C.); *Mason* (Ohio).

intended "to make effective the provisions of the common law, so far as they are not inconsistent with the conditions and circumstances of our people." *Grigsby v. Reib,* 105 Tex. 597, 153 S.W. 1124, 1125 (1913). Our courts have consistently made changes in the common law of torts as the need arose in a changing society. *See, e.g., Sanchez v. Schindler,* 651 S.W.2d 249 (Tex. 1983) (recovery of loss of society and mental anguish allowed in response to needs of modern society); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512 (Tex.1978) (landowner's duty owed to tenants extends to guests); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967) (strict liability in tort expanded to include defective products); *Decker & Sons, Inc. v. Capps,* 139 Tex. 609, 164 S.W.2d 828 (1942) (manufacturer of impure food liable for injuries in absence of negligence as a matter of public policy); *Hill v. Kimball,* 76 Tex. 210, 13 S.W. 59 (1890) (recognition of cause of action for infliction of emotional and mental distress). The need to consider whether the Pooles and Evanses have stated a cause of action in negligence arises now.

■ Negligence, a common law doctrine, consists of three essential elements—a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975); *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519, 531 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r. e.). Duty is the threshhold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort. *Abalos v. Oil Development Co.,* 544 S.W.2d 627, 631 (Tex.1976). In describing "duty" this court has stated generally:

> ... if a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.

*Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109, 110 (1942). More recently, we said duty is the function of several interrelated factors, the foremost and dominant consideration being foreseeability of the risk. *Otis,* 668 S.W.2d at 309; *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983).

In addressing foreseeability, we know by common knowledge that alcohol distorts perception, slows reaction, and impairs motor skills, while operation of an automobile requires clear perception, quick reaction, and adept motor skills. Our everyday use and reliance on the automobile is unquestionable. Also unquestionable is the tragic relationship between intoxicated drivers and fatal or injury-producing accidents. The most recent available statistics show that in 1985, there were 30,794 total motor vehicle traffic accidents in Texas involving intoxicated drivers. *See* TEX. DEP'T OF PUBLIC SAFETY, A LOOK AT DWI ... ACCIDENTS, VICTIMS, ARRESTS 1–4 (1985 ed.). In those accidents, 989 persons were killed and 25,461 were injured. The 1985 figures represent a 6% decrease over 1984, due in part to society's increased awareness of the danger of drunk driving and an increase in "driving while intoxicated" arrests. *Id.* The risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall. *Accord Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 198 A.2d 550, 553 (1964); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 8 (1959); *Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269, 1276 (1982); *Berkeley v. Park,* 47 Misc.2d 381, 362 N.Y.Supp.2d 290, 293 (1965).

■ Based upon foreseeability, the duty of an alcoholic beverage licensee is apparent:

> The first prime requisite to de-intox one who has, because of alcohol, lost control over his reflexes, judgment and sense of responsibility to others, is to stop pouring alcohol into him.

*Jardine,* 198 A.2d at 553. The duty here is merely the application of the general duty to exercise reasonable care to avoid foreseeable injury to others. One hundred

years ago, this court recognized the risk of serving alcohol to an intoxicated person and the duty to refrain from such conduct. *See McCue v. Klein,* 60 Tex. 168, 169–70 (1883). The duty is the same whether the foreseeable injury involves the drunkard himself or a third party who may be placed in peril because of the drunkard's condition. Moreover, the common law recognizes the duty to take affirmative action to control or avoid increasing the danger from another's conduct which the actor has at least partially created. *See Williams v. Steves Industries, Inc.,* 699 S.W.2d 570 (Tex.1985) (tort of negligent entrustment); *Golden v. Tips,* 651 S.W.2d 364 (Tex.App. —Tyler 1983, no writ) (physician may owe duty to motoring public to warn patient of drug side effects); *see also,* RESTATEMENT (SECOND) TORTS § 315 (1965) (duty to control conduct of third persons). The obvious analogy between the duty here and the tort of negligent entrustment has not escaped the attention of other jurisdictions. *See, e.g., Buchanan v. Merger Enterprises, Inc.,* 463 So.2d 121, 126 (Ala. 1984); *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200, 209 (1983); *Hutchens v. Hankins,* 63 N.C.App. 1, 303 S.E.2d 584, 597 (1983); *Rappaport,* 156 A.2d at 7.

■ Separate and apart from our recognition here of a common law duty of reasonable care based on the principle of foreseeability, the attendant standard of conduct may in addition be determined by a penal statute. *Nixon v. Mr. M Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985); *Missouri Pacific Railroad v. American Statesman,* 552 S.W.2d 99, 102–03 (Tex.1977). The unexcused violation of a statute setting an applicable standard of care constitutes negligence as a matter of law if the statute is designed to prevent an injury to that class of persons to which the injured party belongs. *Nixon,* 690 S.W.2d at 549; *see also Murray v. O & A Express, Inc.,* 630 S.W.2d 633, 636 & n. 4 (Tex.1982) (categories when statutory violation is excused). "A person commits an offense if he knowingly sells an alcoholic beverage to an habitual drunkard or an intoxicated person or an insane person." TEX.ALCO.

BEV.CODE ANN. § 101.63(a) (Vernon 1978) (hereafter "Code").

■ In addressing whether § 101.63(a) establishes an applicable standard of conduct, El Chico and Joleemo correctly state that art. XVI, § 20 of the Texas Constitution grants the Legislature the power to regulate the manufacture, sale, transportation, and possession of intoxicating liquors. The regulation of alcoholic beverages is governed exclusively by the provisions of the Alcoholic Beverage Code. Code § 1.06. Regulations encompass among other things the hours of sale, to whom sales may be made, and where intoxicants may be consumed. Code § 105.01–.05 (Vernon Supp. 1987); § 106.01–.13 (Vernon Supp.1987); § 101.72 (Vernon Supp.1987). The administrative regulation of alcoholic beverages, however, does not foreclose using the statute as a definition of reasonable conduct in a civil suit. By recognizing the standard of conduct imposed by the statute, we are not regulating alcohol, but rather acknowledging possible civil liability for failure to follow the statutory standard. Moreover, a standard of conduct may be found in a statute silent on the issue of civil liability. *Nixon,* 690 S.W.2d at 549; *American Statesman,* 552 S.W.2d at 102–03: RESTATEMENT (SECOND) TORTS § 286 comment d (1965) (a court, in making judicial rules, may adopt standard of conduct provided in penal enactment; decision to adopt standard is for the court, and is purely a judicial one).

The expressed public policy of the Alcoholic Beverage Code is the protection of the welfare, health, peace, temperance, and *safety* of the people of the state. Code § 101.03 (Vernon 1978). The express purpose of a statute, stated in the preamble, may evidence which persons are included within a protected class. *See Largo Corp. v. Crespin,* 727 P.2d 1098, 1108 (Colo. 1986). The safety and well being of persons like the dead Larry Poole and Patrick Evans, as members of the general public, is one of the express policies of the Alcoholic Beverage Code and extends to and encompasses § 101.63(a). The enactment of the Texas Alcoholic Beverage Code and the

statutes relating to driving while intoxicated are clear evidence of the Legislature's explicit recognition of the dangers associated with intoxication and the need to protect the public.

By interpreting the general purposes of § 101.63(a) to protect the safety and welfare of the general public in addition to those named, Texas joins the modern trend in tort law and the majority of other jurisdictions with statutes similar to § 101.63(a). *See Nazareno v. Urie,* 638 P.2d 671, 675 (Alaska 1981); *Ontiveros,* 667 P.2d at 209; *Largo Corp.,* at 1103; *Ono v. Applegate,* 62 Haw. 131, 612 P.2d 533, 539 (1980); *Munford, Inc. v. Peterson,* 368 So.2d 213, 216 (Miss.1979); *Hutchens v. Hankins,* 63 N.C.App. 1, 303 S.E.2d 584, 592–93 (1983); *Rappaport,* 156 A.2d at 8; *Lopez,* 651 P.2d at 1275; *Berkeley,* 262 N.Y.S.2d at 293, 94; *Davis v. Billy's Con-tenna, Inc.,* 684 Or. 351, 587 P.2d 75, 77 (1978); *Walz v. City of Hudson,* 327 N.W.2d 120, 122 (S.D.1982); *Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108, 114 (1984). In the absence of a valid excuse, a liquor licensee is negligent as a matter of law under the statute when he knowingly sells an alcoholic beverage to an intoxicated person.

■ In order to complete a cause of action in negligence, a plaintiff must establish that the liquor licensee's negligent conduct proximately caused his injuries. Proximate cause consists of cause in fact and foreseeability. *Exxon v. Quinn,* 726 S.W.2d 17, 21 (Tex.1987); *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 756 (Tex.1975). Cause in fact is "but for cause," meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Nixon,* 690 S.W.2d at 549. El Chico and Joleemo argue any duty premised on the statute fails the cause in fact test, *i.e.,* because the patron is already intoxicated, the cause of the plaintiff's injuries is already present. They suggest any question of duty is moot until the person becomes intoxicated, and under § 101.63(a), it is not unlawful to continually serve alcohol until and unless the patron becomes intoxicated.

■ El Chico and Joleemo misread the Pooles' and Evanses' cause in fact burden. The plaintiff must prove it is more probable than not that but for the licensee's conduct, the accident would not have occurred. *See Farley,* 529 S.W.2d at 755–56. In *Farley,* we noted the plaintiff need not exclude all possibility that the accident occurred other than how he alleges, but instead must only prove the greater probability is that the defendant's conduct was a cause of the accident. *Id.* All persons who contributed to the injury are liable; the negligence of one does not excuse the negligence of another. *Strakos v. Gehring,* 360 S.W.2d 787, 794 (Tex.1962). Furthermore, no precise point exists for determining when a person goes from an unintoxicated state to an intoxicated state. Since "intoxication" is not defined in § 101.63, it is to be given its commonly understood meaning. *See Campos v. State,* 623 S.W.2d 657 (Tex. Crim.App.1981). Intoxication refers to a condition when, due to the consumption of alcoholic beverages, a person suffers impaired mental or physical faculties and a resulting diminution of the ability to think and act with ordinary care. Thus, the duty to discontinue serving alcohol arises once, through the observation of a patron's demeanor, conduct or appearance, a licensee knows or should know the patron is intoxicated.

■ Foreseeability, the second element of proximate cause, means the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others. *Nixon,* 690 S.W.2d at 550; *American-Statesman,* 552 S.W.2d at 103. Foreseeability does not require the actor anticipate the particular accident, but only that he reasonably anticipate the general character of the injury. *Nixon.* In deposition testimony, an El Chico vice president acknowledged El Chico's awareness that some patrons drive to the restaurant, become intoxicated, and then leave by the same means as they arrived. Generally, a person's criminal conduct is a superseding cause extinguishing liability of a negligent actor. Operation of a motor vehicle while intoxicated is unlawful. TEX.REV.CIV.

STAT.ANN. art. 6701*l*–1 (Vernon Supp. 1987). The tortfeasor's negligence, however, is not superseded when the criminal conduct is a foreseeable result of the negligence. *Nixon*, at 550. Clearly, a patron's criminal act is a foreseeable consequence in light of our universal use of automobiles and accidents involving drunk drivers. The Arizona Supreme Court concluded:

> Common sense, common experience and authority all combine to produce the irrefutable conclusion that furnishing alcohol, consumption of alcohol, and subsequent driving of a vehicle when it is then involved in an accident are all foreseeable, ordinary links in the chain of causation leading from the sale to the injury.

*Ontiveros*, 677 P.2d at 207.

The determination of proximate cause and intervening cause in cases involving a licensee's liability for knowingly serving alcohol to an intoxicated patron rests with the jury, as in any other action grounded in negligence. Issues of concurrent causation are not outside the competence of our judicial system. While a jury may find a licensee's conduct is not the proximate cause of an injury, the inquiry should be made on a case-by-case basis, not a rule of law denying recovery in all cases. The absolute rule of no proximate cause is no longer viable today when a patron sits behind the wheel of an automobile instead of jumping on a horse.

■ Based on both common law negligence principles and a violation of § 101.63(a), we hold an alcoholic beverage licensee owes a duty to the general public not to serve alcoholic beverages to a person when the licensee knows or should know the patron is intoxicated. A licensee who violates that duty by serving alcoholic beverages to an intoxicated person is negligent as a matter of law. Whether a licensee breached his duty and whether that breach proximately caused a plaintiff's injuries are issues of fact for a jury to resolve.

In recognizing the cause of action announced today, we are mindful that the legislature has this week enacted a statute creating a civil remedy for persons injured by a licensee's intoxicated patron. The legislature amended the Alcoholic Beverage Code to include a civil cause of action against an alcoholic beverage licensee when "at the time ... [of service] ... it was *apparent* to the provider that the individual being ... served ... was *obviously* intoxicated to the extent he presented a *clear danger* to himself and others." Act of June 1, 1987; § 3 (to be codified at TEX.ALCO.BEV.CODE ANN. § 2.02) (emphasis added).[4] The legislature appears to have created a much more onerous burden of proof for an injured plaintiff than we have in this opinion. This act, however, does not by its terms govern a cause of action arising or accruing before its effective date. We should determine then whether, as El Chico and Joleemo contend, the legislature has previously expressed its intent regarding civil liability.

■ In 1977, 1979 and 1983, legislation creating a civil remedy was introduced but never voted on by the legislature as a body or by any committee. Failure to report a bill from committee or inaction by the legislature, however, does not conclusively establish legislative intent. *See Sanchez v. Schindler*, 651 S.W.2d 249, 252 (Tex.1983). *Accord Ontiveros*, 667 P.2d at 212 (unable to find expression of intent in absence of legislative action); *Sorensen*, 350 N.W.2d at 112 (non-passage of dramshop bill not reliable evidence of legislative intent). While failure to enact a bill may arguably be some evidence of intent, other reasons are equally inferable. Lack of time for consideration, opposition by a particular member or committee chair, efforts of special interest groups, or any other unidentified extraneous factor may, standing alone or combined together, act to defeat a legislative proposal regardless of the legislature's collective view of the bill's merits. *Ontiveros; Sorensen*.

The creation of new concepts of duty in tort is historically the province of the judiciary. *See Rosas*, 518 S.W.2d at 536; *Buchanan*, 159 S.W.2d at 110; *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59, 59 (1890).

---

**4.** The effectiveness of this act depends upon the action, if any, taken by the Governor.

While as citizens we applaud the legislature's efforts to discourage and deter alcohol abuse and drunk driving, we as a court cannot cower from our obligation to recognize a legitimate cause of action grounded in negligence and based upon every person's duty to exercise reasonable care to avoid a foreseeable risk of injury to others. It is the duty of the courts of this state to resolve disputes between parties who invoke the authority of the judiciary. And since the "no liability" rule is a judge-made rule of common law, we will not idly "stand by and wring our hands at the unfairness which we ourselves have created." *McClellan v. Tottenhoff,* 666 P.2d 408, 415 (Wyo.1983). We agree that "[w]hen the ghosts of the past stand in the path of justice, clanking their medieval chains, the proper course for the judge is to pass through them undeterred." *United Australia, Ltd. v. Barclays Bank, Ltd.* [1940] 4 All E.R. 20, 37 (Lord Atkin).

El Chico and Joleemo contend that the rule announced today is too burdensome and places compliance beyond their capabilities. On the contrary, the burden is no more than that already placed upon them by law. *See* Code § 101.63(a). They have the right to control the amount of alcohol served and are statutorily required to exercise that control. Furthermore, they are required to do no more than to respond in damages if and when they fail to use due care. *Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213, 219 (Ariz.1983). Liability is grounded in the public policy behind the law of negligence which dictates every person is responsible for injuries which are the reasonably foreseeable consequence of his act or omission. *Strakos,* 360 S.W.2d at 794. We are not dealing with a situation where a licensee merely furnished alcohol to a patron; the issues here involve selling or serving alcohol to a patron whom the licensee knows or should know is intoxicated. Recognition of this cause of action will afford a fairer measure of justice to innocent third parties who are injured by the negligent and unlawful sale of alcoholic beverages, hopefully strengthen compliance with the statute, and only hold an alcohol beverage licensee to a duty which he may discharge by exercising reasonable care.

■ In reviewing the summary judgment granted to El Chico we accept as true evidence in favor of the Pooles, indulge in every reasonable inference, and resolve any doubts in their favor. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Although Saenz does not recall his conduct in El Chico, his apparent intoxication at the accident scene shortly after leaving El Chico raises a fact issue whether El Chico's employees sold alcohol to Saenz when they knew or should have known of his intoxication. This evidence raises issues of material fact concerning El Chico's negligence. Whether El Chico was in fact negligent and whether that negligence was a proximate cause of the Pooles' damages are fact questions for a jury. We only determine that the Pooles have stated a cause of action and that the summary judgment was improper.

■ In *Joleemo,* the dismissal of the Evanses' petition for failure to state a cause of action was improper. The Evanses pleaded that Smith was sold alcohol when Bandy's knew or should have known Smith was intoxicated and the sale was a proximate cause of their injuries. The pleadings state a cause of action under the rule announced today.

Accordingly, the court of appeals' judgment in *El Chico v. Poole* is affirmed, and the cause is remanded to the trial court. The court of appeals' judgment in *Joleemo v. Evans* is affirmed, and the cause is remanded to the trial court.